IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MECADON<br><br>v.<br><br>ALLSTATE INDEMNITY CO.<br><br>Civil Litigation No. 09-5511-TJS<br>Judge Timothy J. Savage | KOLESAR, et al.<br><br>v.<br><br>ENCOMPASS INDEMNITY CO.<br><br>Civil Litigation No. 09-5510-TJS<br>Judge Timothy J. Savage |
|---|---|
| BUCARI, et al.<br><br>v.<br><br>ALLSTATE PROPERTY and CASUALTY INSURANCE COMPANY<br><br>Civil Litigation No. 09-5512-TJS<br>Judge Timothy J. Savage | WARRICK<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY<br><br>Civil Litigation No. 09-6077-TJS<br>Judge Timothy J. Savage |

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs, individually and on behalf of a Class of all those similarly situated, bring this action for damages and equitable relief arising from Defendants' overcharges for automobile insurance in the Commonwealth of Pennsylvania. Plaintiffs' allegations are based on actual knowledge as to their own acts and on information and belief as to the acts of others. The majority of information and documents in support of Plaintiffs' claims are in the exclusive possession, custody, or control of Defendants or third parties. The allegations concerning

Defendants' conduct are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Plaintiffs demand a trial by jury, and allege as follows:

## Nature of the Case

1. Pennsylvania law, 75 Pa. C.S. § 1799.1, requires that companies selling automobile insurance in the state provide at least a 10% discount on the premium charged for comprehensive insurance coverage if the policyholder's car has a passive anti-theft device.

2. In many cars, a passive antitheft device is part of the standard equipment that comes with the car. Defendants' policyholders, who own cars equipped with a passive antitheft device as standard equipment, therefore, automatically qualify for the statutorily mandated 10% discount.

3. Defendants Allstate Insurance Company, Allstate Indemnity Co., Allstate Property and Casualty Insurance Company, Encompass Indemnity Company, Allstate Fire and Casualty Insurance Co., Encompass Home and Auto Insurance Co., Encompass Insurance Co., of America, Deerbrook Insurance Co., and Northbrook Indemnity Insurance Co., (collectively, "Allstate") fail to provide the mandated anti-theft discount for policyholders whose cars have passive antitheft devices as part of their standard equipment. Defendants know or should know that these policyholders qualify for the statutory discount, yet they systematically fails to provide the required discount.

4. Plaintiffs have accordingly filed this case as a class action on behalf of all of Defendants' policyholders who have automobiles in which passive antitheft devices are part of the standard equipment, but nevertheless did not receive the required discount on the comprehensive coverage portion of their premiums from Defendants.

5. This Complaint asserts that Defendants violated Pennsylvania insurance and consumer protection laws, breached the implied and express terms of the contracts with its policyholders, and fraudulently and negligently misrepresented the applicable rates to its policyholders. Plaintiffs, on behalf of themselves and the class, seek damages and reformation of the contracts.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because:

(a) at least one member of the putative class is a citizen of a state different from Defendant; (b) the amount in controversy exceeds $5,000,000 exclusive of costs and interest; and (c) none of the exceptions under subsection 1332(d)(5) apply to this action.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant regularly conducts business here and is subject to personal jurisdiction in this District.

## The Parties

8. Plaintiff Ann Warrick is a resident of Pennsylvania. Ms. Warrick had a policy with Allstate Insurance Co. that insured her private passenger automobile, a 2003 Dodge Neon. Ms. Warrick's Neon had as manufacturer's standard equipment the Sentry Key® engine immobilizer. Ms. Warrick was charged and paid premiums for comprehensive coverage that did not include discounts for having an anti-theft device. For example, Ms. Warrick's Allstate policy for the policy period December 8, 2006 through June 8, 2007 included a $102.35 premium for comprehensive coverage on her Neon that did not include discounts for having antitheft devices.

9. Plaintiff Nicole Mecadon is a resident of Pennsylvania. Ms. Mecadon had a policy with Allstate Indemnity that insured her private passenger automobile, a 1997 Cadillac El Dorado. The El Dorado had as manufacturer's standard equipment an engine immobilizer, a Sentry Key® Engine Immobilizer. Ms. Mecadon was charged and paid premiums for comprehensive coverage that did not include discounts for having an anti-theft device. For example, Ms. Mecadon's Allstate Indemnity policy that went into effect on February 26, 2009 included a $204.27 premium for comprehensive coverage that did not include a discount for having an antitheft device.

10. Plaintiffs Ronald and Kim Bucari are residents of Pennsylvania. The Bucaris had a policy with Allstate that insured their private passenger automobiles, a 2008 Honda Accord EX-L and a 2005 Jeep Liberty Renegade. The Accord had as standard manufacturer's equipment an engine immobilizer and an alarm system. The Renegade had as standard manufacturer's equipment an engine immobilizer, a Sentry Key® Vehicle Anti-Theft Engine Immobilizer. The Bucaris were charged and paid premiums for comprehensive coverage that did not include discounts for having anti-theft devices. For example, the Bucaris' policy for the policy period June 26, 2009 through December 26, 2009 included a $42.60 premium for comprehensive coverage on the Accord and a $49.60 premium for comprehensive coverage on the Accord and a $49.28 premium for comprehensive coverage on the Renegade. Neither of those premiums included a discount for having antitheft devices.

11. Plaintiff Deborah Kolesar is a resident of Pennsylvania. Ms. Kolesar had a policy with Encompass Indemnity that insured their private passenger automobile, a 2000 Chevy Blazer. The Blazer had as manufacturer's standard equipment an engine immobilizer, a PassLock® vehicle theft-deterrent system. Ms. Kolesar was charged and paid premiums for

comprehensive coverage that did not include discounts for having an anti-theft device. For example, Ms. Kolesar's policy for the policy period March 23, 2009 included a $69.00 premium for comprehensive coverage that did not include a discount for having an antitheft device.

12. Defendant Allstate Insurance Company is an insurance company incorporated in the state of Illinois, with its principal place of business in Northbrook, Illinois.

13. Defendant Allstate Indemnity Company is an insurance company incorporated in the state of Illinois, with its principal place of business in Northbrook, Illinois.

14. Defendant Encompass Indemnity Co. is an insurance company incorporated in the state of Illinois, with its principal place of business in Northbrook, Illinois.

15. Defendant Allstate Property and Casualty Insurance Company is an insurance company incorporated in the state of Illinois, with its principal place of business in Northbrook, Illinois.

16. Defendant Allstate Indemnity Co. is an insurance company incorporated in the state of Illinois, with its principal place of business in Northbrook, Illinois.

17. Defendant Allstate Fire and Casualty Insurance, Co. is an insurance company incorporated in the state of Illinois, with its principal place of business in Northbrook, Illinois.

18. Defendant Encompass Home and Auto Insurance Co. is an insurance company incorporated in the state of Illinois, with its principal place of business in Northbrook, Illinois.

19. Defendant Encompass Insurance Co. of America is an insurance company incorporated in the state of Illinois, with its principal place of business in Northbrook, Illinois.

20. Defendant Deerbrook Insurance Co. is an insurance company incorporated in the state of Illinois, with its principal place of business in Northbrook, Illinois.

21. Defendant Northbrook Indemnity Insurance Co. is an insurance company incorporated in the state of Illinois, with its principal place of business in Northbrook, Illinois.

### The Facts

22. Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. C.S. § 1701, et seq., specifically requires that all policies for automobile insurance issued in the state include premium reductions for comprehensive coverage for automobiles equipped with certain anti-theft devices. Under a subsection entitled "Antitheft Devices," the law states:

> All insurance companies authorized to write private passenger automobile insurance within this Commonwealth shall provide premium discounts for motor vehicles with passive antitheft devices. These discounts shall apply to the comprehensive coverage and shall be approved by the commissioner as part of the insurer's rate filing, provided that such discounts shall not be less than 10%. Some or all of the premium discounts required by this subsection may be omitted upon demonstration to the commissioner in an insurer's rate filing that the discounts are duplicative of other discounts provided by the insurer.

75 Pa. C.S. § 1799.1

23. The statute then defines "passive antitheft device" as:

> Any item or system installed in an automobile which is activated automatically when the operator turns the ignition key to the off position and which is designed to prevent unauthorized use, as prescribed by regulations of the commissioner. The term does not include an ignition interlock provided as a standard antitheft device by the original automobile manufacturer.

*Id.*

24. In addition, section 1791.1 of the MVFRL requires that insurers also notify qualified policyholders of the availability of anti-theft discounts:

> Except where the commissioner has determined that an insurer may omit a discount because the discount is duplicative of other

> discounts or is specifically reflected in the insurer's experience, at the time of application for original coverage and every renewal thereafter, an insurer must provide to an insured a notice stating that discounts are available for drivers who meet the requirements of sections 1799 (relating to restraint system), 1799.1 (relative to anti-theft devices), and 1799.2 (relating to driver improvement course discounts).

*Id.* at 1791.1(c)

25. The two principal forms of antitheft devices installed as standard original equipment on cars built and sold in the United States in the past several years have been alarm systems and engine immobilizers. An engine immobilizer is a passive disabling device engineered into the car that causes the engine not to function if the correct key device is not used to start it. Immobilizer devices are variously called pass key systems, passlock systems, transponders, keyless start systems, VATS, PATS, securilocks or SKIS-sentry key immobilizers, but they all perform the same basic function: they prevent the engine from running without the original manufacturer's key device. An engine immobilizer is a distinct and separate device from the ignition interlock. The cars manufactured and sold in the United States containing passive antitheft devices are well-known throughout the insurance industry, and it takes a matter of seconds to determine on the internet if any particular make and model of automobile comes with antitheft devices as standard original manufacturer's equipment.

26. Within the past six years, Plaintiffs were the holders of policies issued by Allstate companies that insured their private passenger automobile. These automobile was equipped with an engine immobilizer as part of the auto's standard manufacturing equipment. This means that the manufacturer of Plaintiffs' automobile included these antitheft devices in every such car. Therefore, Plaintiffs were entitled, under Pennsylvania law, to at least a 10% discount in their premium for comprehensive coverage.

27. Plaintiffs never received the discount, despite the fact that it was mandated by law.

28. On information and belief, Defendants, in their rate filings with the Commonwealth's Commissioner of Insurance, have never requested exclusion from the statutory requirements of providing an anti-theft discount based on duplicative discounts offered. Nor are Defendants exempted from the duty to provide notice to qualified policyholders of the availability of the anti-theft discount as required by 75 Pa. C.S. § 1791.1.

29. The defendant Allstate companies all share common practices and procedures with respect to Pennsylvania's passive antitheft device discount. As a prerequisite to providing any insurance to a proposed insured, Defendants require standard information on the make, model, and year of the vehicle to be insured. Knowing this information in respect to Plaintiffs and other insureds in Pennsylvania meant that either Defendants knew that Plaintiffs' and other insureds' cars qualified for the mandated antitheft discount, or they recklessly or negligently ignored that fact.

30. In this regard, Defendants maintain a common database, which includes information identifying by Vehicle Identification Number whether a car has a standard equipment passive disabling device.

31. Although Defendant is required to provide the antitheft discount without requiring any input from an applicant whose car has a passive antitheft device as part of its standard equipment, before the commencement of this litigation, Defendants' policy and practice was not to use the information in their database to apply an antitheft device discount in Pennsylvania. Thus, Defendants either concealed facts concerning the availability of this discount, or disclosed

the relevant facts in a manner such that applicants for insurance are unaware that they qualify for the discount.

## Class Action Allegations

32. Plaintiff brings this action under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of herself and the following class of similarly situated persons (the "Class"):

All Allstate Insurance Company, Allstate Property and Casualty Company, Allstate Indemnity Company, Encompass Indemnity Company, Allstate Fire and Casualty Co., Encompass Insurance Company of America, Encompass Home and Auto Insurance Co., Deerbrook Insurance Co., and Northbrook Indemnity Co., policyholders in Pennsylvania who at any point from November 19, 2005 through December 31, 2013 (a) had a policy of automobile insurance that included comprehensive insurance coverage; (b) whose insured vehicle(s), according to Allstate's Home Office VIN System has passive antitheft device installed as manufacturer's standard equipment; and (c) did not receive at least a 10% discount on the comprehensive coverage portion of the paid premium.

33. On information and belief, the members of this Class number at least in the thousands and are geographically diverse, such that joinder of all of the individual class members is impracticable. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendant's records.

34. Plaintiffs' claims are typical of the claims of all the other members of the Class. The claims of Plaintiffs and the other members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiff and to all of the other Class members.

35. The Class has a well-defined community of interest. Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members.

36. There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual Class members.

37. Common questions of law and fact affecting members of the Class include, but are not limited to:

   a. Whether Defendants violated 75 Pa. C.S. § 1799.1;

   b. Whether Defendants' conduct constitutes a breach of express or implied contract;

   c. Whether Defendants violated Pennsylvania's consumer fraud statute, the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

   d. Whether Defendants committed fraudulent or negligent misrepresentation by failing to inform Class members that they were eligible for the antitheft discount;

   e. Whether Plaintiffs and Class members are entitled to damages, costs, and/or attorneys' fees from Defendant;

   f. Whether Plaintiffs and Class members are entitled to a reformation of their policy contracts with Defendant as a remedy to Defendant's engaging in unlawful conduct.

38. Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

39. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and their counsel are committed to

vigorously prosecuting this action on behalf of the other Class members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other Class members.

## COUNT I

### [Violation of the Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. § 1799.1]

40. Plaintiffs incorporate paragraphs 1-39 by reference.

41. When the Legislature enacted the MVFRL, one of its primary goals was to reduce the cost of automobile insurance in the state.

42. To that end, the MVFRL mandates that policyholders whose automobiles include passive anti-theft systems must be given at least a 10% discount on the premium charged for comprehensive coverage.

43. Plaintiffs and other members of the Class were entitled, under the MVFRL, to the anti-theft discounts. In addition, they were entitled by this same law to have notice from Defendant that anti-theft discounts were available to them.

44. Defendants never provided these discounts to Plaintiffs and other Class members, nor did it ever inform them that those discounts were available.

45. As such, Defendants violated the MVFRL.

46. Plaintiffs and other Class members have been damaged by Defendants' violation of the MVFRL, as they have been forced to pay higher premiums for their policies than were permitted under state law.

47. Plaintiffs and other Class members have an implied right of action under the MVFRL to remedy this violation and fulfill the Legislature's intent when it enacted the law.

## COUNT II

### [Breach of Implied Contract]

48. Plaintiffs incorporate paragraphs 1-47 by reference.

49. By operation of law, existing laws and statutes, including those applicable to insurance policies such as 75 Pa. C.S. § 1799.1, are implied terms of any contract to which such laws and statutes pertain, and are considered a part of such contract as though they were expressly incorporated therein.

50. As alleged above, Plaintiffs' and other Class members' automobiles were equipped with one or more qualifying anti-theft devices, entitling Plaintiffs and the other Class members to the anti-theft discounts provided by 75 Pa. C.S. § 1799.1

51. Defendants violated 75 Pa. C.S. § 1799.1 by failing to provide the anti-theft discounts to Plaintiffs and other Class members. In violating this statute, Defendants also breached the implied terms of its contracts with Plaintiff and other Class members.

52. Defendants also violated 75 Pa. C.S. § 1791.1 by failing to inform qualified policyholders that they were eligible for anti-theft discounts. In violating this requirement of the MVFRL, Defendants also breached the implied terms of its contracts with Plaintiff and other Class members.

53. Plaintiffs and other Class members were damaged by Defendants' breach of contract in that they paid higher premiums on their policies than they should have under the state law and the terms of the contract.

54. Plaintiffs and other Class members performed all of their obligations under the terms of their contracts with Defendant.

PHDATA 4894566_1

## COUNT III

### [Breach of Contract — Reformation]

55. Plaintiffs incorporate paragraphs 1-54 by reference.

56. Plaintiffs and other Class members, when they agreed to purchase automobile insurance from Defendants, assumed that their contracts would follow applicable state law.

57. Defendants, as companies that sell automobile insurance, know that applicable state laws would govern their policies with Plaintiffs and other Class members.

58. Therefore, Plaintiffs and other Class members, as well as Defendants, had the express intention and understanding that the contracts would conform with and follow state law.

59. However, the written policies that Defendants issued to Plaintiffs and other Class members did not conform to state law, because they did not include the anti-theft discount despite the fact that Plaintiffs and other Class members were eligible for that discount.

60. Due to this mutual mistake on the part of both Defendants and Plaintiffs and the other Class members, Plaintiffs and other Class members have suffered damages and an inequitable result, because they are paying more for their policies than is permitted under state law.

61. Alternatively, Defendants knew that the MVFRL required that Plaintiffs and other Class members be given the anti-theft discounts, and knew that its contracts with Plaintiffs and other Class members did not conform to the law. Defendants also knew that Plaintiffs was mistaken as to what the law required, as Plaintiffs continued to pay the higher premiums and did not demand the 10% discount. Despite this, Defendants never sought to make Plaintiffs aware of the mistake nor correct the mistake in any way.

62.     Due to this unilateral mistake and Defendants' knowledge of and failure to correct the mistake, Plaintiffs and other Class members have suffered damages and an inequitable result, because they are paying more for their policies than is permitted under state law.

63.     Plaintiffs and other Class members are therefore entitled to reformation of their automobile insurance policies issued by Defendants.

## COUNT IV

### [Pennsylvania Unfair Trade Practices Act and Consumer Protection Law]

64.     Plaintiffs incorporate paragraphs 1-63 by reference.

65.     At all relevant times, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S. § 201-1 et seq. ("UTPCPL") was in effect and applicable to the transactions at issue in this case.

66.     Plaintiffs and members of the proposed Class purchased automobile insurance from Defendants primarily for personal, family or household purposes within the meaning of 73 Pa. C.S. § 201-9.2.

67.     Defendants have been regularly engaged, as part of its general business practice, in a scheme of: (a) wrongfully misrepresenting the applicable rate for automobile insurance by failing to inform class members that they were entitled to the anti-theft discount of at least 10% as mandated by state law; (b) wrongfully making these misrepresentations for the purpose of obtaining an increased premium for the policies of Plaintiff and Class members; and (c) wrongfully charging Plaintiff and other Class members a higher rate for automobile insurance than Defendant was permitted to charge by law.

68. Defendants used and employed unfair and/or deceptive acts or practices within the meaning of 73 Pa. C.S. §§ 201-2 and 201-3. These unfair and/or deceptive acts and practices include, but are not limited to:

a. Failing to comply with any written guaranty or warranty given to the buyer at, prior to or after a contract for the purchases of goods or services made under § 201-2(4)(xiv) (Defendant failed to uphold the terms of the policies issued to Plaintiff and other Class members, which by law incorporate all relevant statutes and regulations, by charging premiums that were in excess of those permitted by state law).

b. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding under § 201-2(4)(xxi) (Defendant charged a higher premium than it was permitted to by state law, and never informed Plaintiff and other Class members that they were entitled by law to at least a 10% discount on their comprehensive insurance premiums. Defendant thus purposely deceived Plaintiff and the Class and concealed from them the fact that they were entitled to the anti-theft discount.)

69. Defendants' misrepresentations, concealment, omissions, and general conduct were likely to deceive and likely to cause misunderstanding and/or in fact caused Plaintiffs and other Class members to be deceived and to misunderstand that they were paying more for their insurance policies than was permitted by state law.

70. Defendants intended that Plaintiff and other Class members would rely on their misrepresentations, concealment, omissions, and/or deceptions that they were being charged the correct rate for automobile insurance under state law.

71. Plaintiffs and other Class members, by routinely paying their premiums to maintain their policies, did in fact rely on Defendants' misrepresentations, concealment, omissions and deceptions.

72. Plaintiffs and other Class members have been damaged as a result of Defendants' deliberate violations of the UTPCPL and have suffered actual, ascertainable losses, in that they paid higher premiums for their automobile insurance policies than they should have, because they should have been given at least a 10% antitheft discount, as mandated by state law.

73. Therefore, Plaintiffs and other Class members are entitled to relief, including $100 per violation, treble damages, and reasonable attorneys' fees and costs under the UTPCPL, 73 Pa. C.S. § 201-9.2

## COUNT V

### [Fraudulent Misrepresentation]

74. Plaintiffs incorporate paragraphs 1-73 by reference.

75. Although state law requires that policyholders whose automobiles contain passive anti-theft devices be given at least a 10% discount on their comprehensive insurance premiums, Plaintiffs and other Class members, who were entitled to that discount, never received it, nor were they ever informed that the discount was available to them.

76. Because Defendants require the basic information of make, model and year of each vehicle on which it issues a policy, Defendants knew or were reckless in not knowing that Plaintiff and the other Class members were entitled to the anti-theft discount.

77. By failing to inform Plaintiffs of their eligibility for the anti-theft discount, and by failing to provide that discount, despite being mandated to do so by state law, Defendants committed a misrepresentation by omission.

78. As no policyholder would willingly pay higher premiums if he or she knew that a lower premium was available, the misrepresentations by Defendants were material to procuring agreement from Plaintiffs and other Class members to purchase automobile policies at a higher rate than they were entitled to.

79. Defendants knowingly or recklessly failed to inform Plaintiffs and other Class members of their eligibility for an anti-theft discount with the intent to deceive them into paying higher premiums than were permitted under state law.

80. The fact that Plaintiffs and other Class members continued to pay their premiums demonstrates that they did, in fact, rely on Defendants' misrepresentations.

81. As the direct and proximate result of Defendants' misrepresentations, Plaintiffs and other Class members suffered damages in the form of higher premiums than they should have paid under state law.

## COUNT VI

### [Negligent Misrepresentation]

82. Plaintiffs incorporate paragraphs 1-81 by reference.

83. Defendants knew or was reckless in not knowing that Plaintiffs and other Class members qualified for and were entitled to the anti-theft discount.

84. Defendants did not make Plaintiff and other Class Members aware that they were eligible for this discount, nor did it offer the discount to them.

85. Defendants, by failing to offer the mandated discount to Plaintiff and other Class Members, intended for Plaintiff and other Class Members to pay higher premiums for their automobile insurance than they were required to under state law.

86. Plaintiffs and other Class Members suffered ascertainable damages due to Defendant's negligent misrepresentation of the appropriate policy rates and the existence of an anti-theft discount.

### Jury Demand

Plaintiffs demand trial by jury on all counts for which a jury trial is permitted.

### Request for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, pray for the following relief:

a. An order certifying the Class and appointing Plaintiffs as the representatives of the Class, and appointing counsel for Plaintiffs as lead counsel for the Class;

b. An order declaring that the acts and practices of Defendants, as set out above, constituted a breach of express and implied contract, fraudulent and/or negligent misrepresentation, and a violation of 75 Pa. C.S. § 1799.1, the Antitheft provision of the Motor Vehicle Financial Responsibility Law; and 73 Pa. C.S. § 201-1, et sq., the Unfair Trade Practices and Consumer Protection Law;

c. A judgment for and award of actual and punitive damages to Plaintiffs and the members of the Class;

d. Payment of costs of suit herein incurred and reasonable attorneys' fees;

e. Treble damages, $100 per violation, and reasonable attorneys' fees and costs under the UTPCPL, 73 Pa. C.S. § 201-9.2;

f. An award of pre- and post-judgment interest;

g. Reformation of the contracts between Defendants and all Class members, and a permanent injunction enjoining Defendant from engaging in conduct in violation of 75 Pa. C.S. § 1799.1 and 75 Pa. C.S. § 1791.1;

h. For other and further relief as the Court may deem just and proper.

Dated: April 28, 2014

_____
Ira Neil Richards (atty. I.D. 50879)
Kenneth I. Trujillo (atty. I.D. 46520
Arleigh P. Helfer, III (atty. I.D. 84427)
1600 Market St. , Suite 3600
Philadelphia, PA 19103
Telephone: (215) 751-2000
Facsimile: (215) 751-2205
Email: irichards@schnader.corn
      ktrujillo@schnader.com
      ahelfer@schnader.com

Of Counsel (Not admitted in Pennsylvania)
John G. Jacobs
Bryan G. Kolton
JACOBS KOLTON,CHTD.
55 West Monroe St., Suite 2970
Chicago, Illinois 60603
Telephone: 312-427-4000
Facsimile: 312-427-1850
Email: jgjacobs@jacobskolton.com
      bgkolton@jacobskolton.com

Joseph E. Mariotti
CAPUTO & MARIOTTI, P.C.
730 Main Street
Moosic, Pennsylvania 18507
Telephone: 570-342-9999
Facsimile: 570-457-1533
Email: jmariotti@verizon.net
   ATTORNEYS FOR PLAINTIFFS and the CLASS

PHDATA 4894566_1

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2014, I caused to be electronically filed with the Clerk of the court via CM/ECF, the foregoing Unopposed Motion for Leave to File an Amended Complaint. Notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access that filing through the Court's CM.ECF system.

_____
Ira Neil Richards

PHDATA 4894566_1