**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| MECADON | KOLESAR, et al. |
|---|---|
| v. | v. |
| ALLSTATE INDEMNITY CO. | ENCOMPASS INDEMNITY CO. |
| Civil Litigation No. 09-5511-TJS<br>Judge Timothy J. Savage | Civil Litigation No. 09-5510-TJS<br>Judge Timothy J. Savage |
| BUCARI, et al. | WARRICK |
| v. | v. |
| ALLSTATE PROPERTY and CASUALTY<br>INSURANCE COMPANY | ALLSTATE INSURANCE COMPANY |
| Civil Litigation No. 09-5512-TJS<br>Judge Timothy J. Savage | Civil Litigation No. 09-6077-TJS<br>Judge Timothy J. Savage |

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF THE SETTLEMENT**

Ira Neil Richards (PA ID No. 50879)
Arleigh P. Helfer, III (PA ID No. 84427)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 191003

Of Counsel – Not Admitted in Pennsylvania:
John G. Jacobs
Bryan G. Kolton
JACOBS KOLTON, CHTD.
55 West Monroe Street, Suite 2970
Chicago, IL 60603

Joseph E. Mariotti
CAPUTO & MARIOTTI, P.C.
730 Main Street
Moosic, PA 18507

*Attorneys for Plaintiff as the Classs*

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

BACKGROUND...................................................................................................1

    **A.** Commencement of the Litigation, Class-Related Discovery, Summary Judgment in Favor of Plaintiff and Plaintiff's Amended Motion for Class Certification............................................................................................ 5

    B. The Settlement Agreement ........................................................... 4

    C. Notice to the Class ......................................................................... 6

ARGUMENT.......................................................................................................7

I.      THE SETTLEMENT IS FAIR, REASONABLE, ADEQUATE AND SHOULD BE APPROVED BY THE COURT........................................................... 7

    A. The Proposed Settlement Is Entitled To A Presumption Of Fairness................................. 7

    B. The Girsh Factors Strongly Support Approval ............................................. 9

        1.    The Complexity, Expense, and Duration of the Litigation ................................ 10

        2.    Reaction of the Classes to the Settlements ........................................................ 13

        3.    Stage of the Proceedings and Amount of Discovery Completed ........................ 13

        4.    Risk of Establishing Liability............................................................................. 14

        5.    Risk of Establishing Damages............................................................................ 16

        6.    Risk of Maintaining a Class Action Through Trial ............................................ 16

        7.    Ability of Allstate to Withstand a Greater Judgment ......................................... 17

        8.    The Range of Reasonableness of the Settlement Light of the Best Possible Recovery.............................................................................................................. 17

        9.    Range of Reasonableness of the Settlement Fund in Light of All of the Attendant Risks of Litigation ............................................................................ 19

    C. The Additional *Prudential* Factors Confirm That the Settlement Should be Approved .. 19

    D. The Experience of Class Counsel and Counsel for Settling Defendants Supports Final Approval of the Settlement ..................................................................... 20

II.     PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND
        REASONABLE ............................................................................................. 21

CONCLUSION............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Austin v. Pa. Dep't of Corr.*,
876 F. Supp. 1437 (E.D. Pa. 1995) .................................................................8, 21

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993).......................................................................9, 13

*Bryan v. Pittsburgh Plate Glass Co.*,
494 F.2d 799 (3d Cir. 1974), *cert. denied*, 419 U.S. 900 (1974)..............................8

*Carroll v. Stettler*,
Civ. A. No. 10-2262, 2011 U.S. Dist. LEXIS 121185 (E.D. Pa. Oct. 19, 2011).....................7

*Carson v. American Brands, Inc.*,
450 U.S. 79 (1981)........................................................................7

*Girsh v. Jepsen*,
521 F.2d 153 (3d. Cir. 1975)................................................................ passim

*In re Aetna Inc. Sec. Litig.*,
MDL No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) ...............................12, 17

*In re American Family Enters.*,
256 B.R. 377 (D.N.J. 2000) ................................................................20

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).....................................................9, 10, 17, 21

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995)...........................................................15, 16

*In re Computron Software, Inc.*,
6 F.Supp.2d 313 (D.N.J. 1998)..............................................................21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995)............................8, 13, 14, 17

*In re Ikon Office Solutions, Inc.*,
194 F.R.D. 166 (E.D. Pa. 2000).............................................................21

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................9

*In re Linerboard Antitrust Litig.*,
296 F. Supp. 2d 568 (E.D. Pa. 2003) ........................................................13

*In re Lucent Technologies, Inc. Sec. Litig.*,
  307 F. Supp. 2d 633 (D.N.J. 2004) ....................................................................11, 14

*In re Michael Milken and Assoc. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ..................................................................................21

*In re PNC Fin. Servs. Group, Inc.*,
  440 F. Supp. 2d 421 (W.D. Pa. 2006) ........................................................................13

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
  148 F.3d 283 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) ...................... passim

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) ..................................................................................14

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ...........................................................11, 17, 19

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .................................................................................. passim

*Lake v. First National Bank*,
  156 F.R.D. 615 (E.D. Pa. 1994) ...................................................................................9

*Lake v. First Nationwide Bank*,
  900 F. Supp. 726 (E.D. Pa. 1995) ..............................................................................20

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997) ..................................................................... passim

*Meijer, Inc. v. 3M*,
  No. 04-5871, 2006 U.S. Dist. LEXIS 56744 (E.D. Pa. Aug. 14, 2006) .....................22

*Perry v. FleetBoston Fin. Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005) ...................................................................15, 16, 17

*Shlensky v. Dorsey*,
  574 F.2d 131 (3d Cir. 1978) ..........................................................................................8

*Spring Garden United Neighbors, Inc. v. City of Philadelphia*,
  Civ. A. No. 85-3209, 1986 U.S. Dist. LEXIS 29688 (E.D. Pa. Feb. 4, 1986) ...........20

*Stoetzner v. U.S. Steel Corp.*,
  897 F.2d 115 (3d Cir. 1990) ....................................................................................8, 13

*W. Va. v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970) .............................................................................15

*Walsh v. Great Atl. & Pac. Tea Co.,*
  726 F.2d 956 (3d Cir. 1990) ............................................................................8

*Williams v. First Nat'l Bank,*
  216 U.S. 582 (1910) .........................................................................................7

*Willisch, et al v. Nationwide Ins. Co. of America,*
  852 F. Supp. 2d 582 (E.D.Pa. 2012) ...............................................................4

**STATUTES**

Section 1799.1 of the Pennsylvania Motor Vehicle Financial Responsibility Law
  ("MVFRL"), 75 Pa.C.S. § 1799.1 ...............................................1, 2, 3, 10, 12, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ..............................................................................................1, 7, 8

Rule 23(e) of the Federal Rules of Civil Procedure ..............................................1, 8

# INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs submit this memorandum in support of their motion for final approval of the settlement agreement (the "Settlement") with Defendants Allstate Insurance Company, Allstate Indemnity Insurance Company, Allstate Property and Casualty Insurance Company, and Encompass Indemnity Company, Allstate Fire and Casualty Insurance Co., Encompass Home & Auto Insurance Co., Encompass Insurance Company of America, Deerbrook Insurance Co., and Northbrook Indemnity Insurance Co. (collectively "Allstate"). As set forth more fully below, the Settlement provides substantial and immediate benefits to Class members on terms that represent a fair compromise of the claims asserted in this hard fought case. The Settlement is fair, reasonable, and adequate, thus warranting the Court's approval.

# BACKGROUND[1]

### A. Commencement of the Litigation, Class-Related Discovery, Summary Judgment in Favor of Plaintiff and Plaintiff's Amended Motion for Class Certification

Beginning on November 19, 2009, Plaintiffs filed Complaints (Docket No. 1)[2], alleging that Allstate violated Section 1799.1 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1799.1 and breached standard insurance contracts with insureds in Pennsylvania. The Complaints included additional common law claims and a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Plaintiffs

---

[1] The Declaration of Ira Neil Richards in Support of Plaintiffs' Motion for Final Approval of the Settlement and Class Counsel's Petition for Award of Attorneys' Fees and Expenses, and for An Incentive Award for Class Representatives ("Richards Decl.") provides additional background information.

[2] Citations are to the docket in the first filed *Kolesar* case.

alleged that Allstate charged them and other insureds more for automobile insurance than Pennsylvania law permits.[3] Plaintiffs alleged that section 1799.1 of the MVFRL requires all insurance companies authorized to write private passenger automobile insurance in Pennsylvania to provide a 10 percent premium discount on comprehensive coverage for vehicles with "passive antitheft devices" as defined in 75 Pa.C.S. § 1799.1(b). Plaintiffs further alleged that they, and many other insureds in Pennsylvania, insured vehicles with Allstate that have passive antitheft devices, but did not receive a 10 percent antitheft discount from Allstate on their comprehensive coverage, and thus, were overcharged for their automobile insurance. Plaintiffs alleged that Allstate's failure to provide the antitheft discount also breached Allstate's standard insurance contracts. Plaintiffs sought damages and injunctive relief. On February 26, 2010, Allstate answered Plaintiffs' Complaints (Docket No. 20).

On January 26, 2010, following a preliminary pretrial conference, the Court issued a Scheduling Order requiring the parties to complete all fact and expert testimony by May 28, 2010 (Docket No. 16). Under the Court's schedule, the parties exchanged written discovery requests and responses, and met and conferred on numerous occasions to resolve discovery disputes while producing discovery on a rolling basis. Plaintiffs took the depositions of Allstate's Rule 30(b)(6) designees, and Allstate took Plaintiffs' depositions.

On May 12, 2010, the parties filed a Joint Motion for a Scheduling Conference (Docket No. 28). The parties asked the Court to resolve anticipated summary judgment motions before any class certification motion. On May 13, 2010, the Court issued an Amended Scheduling

---

[3] On February 23, 2010, Plaintiffs and Allstate entered into a stipulation (Docket No. 19) that Plaintiffs would voluntarily dismiss their claims in Counts IV, V, and VI without prejudice and Defendant would answer Plaintiffs' Complaints, including Plaintiff's MVFRL and breach of contract Counts.

Order (Docket No. 33) requiring the parties to file summary judgment and class certification motions by June 30, 2010. The Court also scheduled argument for August 11, 2010.

On May 19, 2010, the parties engaged in a settlement conference presided over by Judge Restrepo.

On June 30, 2010, the parties filed their motions for, and memoranda in support of, summary judgment (Docket Nos. 40, 46, 52). Plaintiffs also filed their motions and brief in support of class certification (Docket No. 47). The parties filed exhibits in support of their motions, and statements identifying facts that they contended were not in dispute (Docket Nos. 44, 45, 49). The same day, Plaintiffs moved in limine to exclude the proffered expert testimony of Robert F. Mangine, Constance B. Foster, and Eugene P. Ericksen (Docket Nos. 41, 42, 54). Plaintiffs filed corrected papers in support of their summary judgment and class certification motions on July 8, 2010 (Docket Nos.58, 59). The parties filed responses to each other's filings on July 16, 2010 (Docket Nos. 62-68, and reply briefs on July 26, 2010 (Docket Nos. 69-75).

On August 11, 2010, the Court held oral argument on the parties' cross-motions for summary judgment and Plaintiffs' class certification motion. On March 29, 2012, the Court granted Plaintiffs' Motion for Summary Judgment on both their individual section 1799.1 (Count I) and breach of contract (Count II) claims as to liability only (Docket No. 90) and denied Allstate's Motion for Summary Judgment (Docket No. 85). The Court denied as moot each of Plaintiffs' motions in limine (Docket Nos. 86-88). Finally, the Court denied Plaintiffs' Motion for Class Certification without prejudice, ordering Plaintiffs to file another motion for class

certification, consistent with the Court's Memorandum Opinion[4], no later than May 1, 2012 (Docket No. 89).

On May 1, 2012, Plaintiffs filed their Amended Motion for Class Certification (Docket No. 91). On May 22, 2012, Allstate filed its Memorandum in Opposition to Plaintiffs' Amended Motion for Class Certification (Docket No. 94). On June 1, 2012, Plaintiffs filed a reply brief in support of class certification (Docket No. 98). On June 18, 2012, the Court ordered Plaintiffs to submit a trial plan (Docket No. 100). On July 11, 2012, Plaintiff filed their trial plan Docket No. 101).

On July 18, 2012, the Court held oral argument on Plaintiffs' amended class certification motion. Before the class certification hearing, the parties engaged in settlement discussions with the assistance of retired Judge James Rosenbaum (D. Minn.). In the months following the class certification hearing, the parties resumed settlement discussions, supervised and aided by Judge Restrepo.

On December 21, 2012, Plaintiffs moved to supplement the class certification record (Docket No. 103). The Court granted Plaintiffs' motion on January 22, 2013. (Docket No. 106). In November 2013, after Allstate provided supplemental interrogatory answers, Plaintiffs again moved to supplement the record and asked the Court to award attorneys' fees (Docket Nos. 110, 112). These motions were withdrawn (Docket No. 114) so the parties could focus their efforts on settlement discussions, which ultimately produced the Settlement Agreement.

B.    **The Settlement Agreement**

Reflecting the benefit of the settling parties' analyses of the legal and factual issues, as well as extensive discovery, and the parties' desire to resolve the case without further litigation,

---

[4]    *See Willisch, et al v. Nationwide Ins. Co. of America*, 852 F. Supp. 2d 582 (E.D.Pa. 2012).

the Settlement Agreement provides for a $9 million settlement fund for the benefit of Settlement Class Members.[5] *See* Settlement Agreement, ¶¶I(x), V(1). In addition, Allstate has agreed to pay all of the costs associated with providing notice to the Settlement Class and administering the settlement, including the fees and expenses of the Settlement Administrator, with Allstate entitled to credit of up to $500,000 for such expenses. *See* Settlement Agreement, ¶IX(2) . Furthermore, Allstate has agreed to "going-forward relief" for applicants in which, for a period of a minimum of two years after the Effective Date[6] and to the extent consistent with Pennsylvania law, Allstate will continue to apply an antitheft device discount of at least 10 percent to all cars where its Home Office VIN Database shows that the car has a passive antitheft device installed as part of the manufacturer's standard equipment. Settlement Agreement ¶V(3). (This practice, which started after the commencement of the litigation, was the subject of Plaintiffs' November 2013 motion to supplement the record and for an award of fees.) In addition, Allstate will educate its agents to ask policyholders who do not automatically receive a discount to check their owners' manuals for a passive antitheft device. *See* Settlement Agreement, ¶V(4).

The amount of Settlement Class Members' distributions will be pro rata from the Net Settlement Fund to pay class members based on 6% of the comprehensive portion of premiums (that is, 60% of alleged damages) that they paid for cars that (1) did not have a 10 percent

---

[5] Only "Distribution Class Members," *see* Settlement Agreement, ¶VIII ("Determining the Identity of Distribution Class Members"), receive a Class Member Award from the Settlement Fund. *See* Settlement Agreement, ¶VII(1). A "Distribution Class Member" is a "Settlement Class Member," *i.e.*, any person who is included in the definition of the Settlement Class, *see* Settlement Agreement, ¶ 37, who also meets the criteria for receiving a distribution from the Settlement Fund, as set forth in paragraph of the Settlement Agreement. Settlement Agreement, ¶¶I(1)(o), VIII.

[6] *See* Settlement Agreement, ¶I(q) .

antitheft device discount applied and (2) Allstate's VIN Database shows have a standard passive antitheft device installed.[7] The Net Settlement Fund is $9 million, less Attorneys' Fees and Expense Award, the payment of up to $500,000 in notice and administration costs, and any Court-awarded incentive payments to the class representatives.[8] All Current Policyholder Class Members automatically will receive a share of the Net Settlement Fund. *See* Settlement Agreement, ¶ VIII(1). Former Policyholder Class Members will receive a share of the Net Settlement Fund if they return an "Address Verification Form" to the Settlement Administrator. Settlement Agreement ¶ VIII(2). Payments will either be in the form of credits (where feasible for current policyholders) or checks. Settlement Agreement ¶¶VII(1-6).

Upon the Court's final approval of the settlement, Settlement Class Members will release any claims they have against Allstate that have been, or could have been, asserted in the litigation relating to vehicle antitheft device premium discounts for automobile insurance policies issued in Pennsylvania. Settlement Agreement ¶¶XV(1-7) .

**C.    <u>Notice to the Class</u>**

Consistent with the Court's order preliminarily approving the Settlement, on July 14, 2014, Epiq, the Court approved Settlement Administrator, mailed a copy of the Notice and Address Verification form to all Class members identified from Allstate's records. In addition, consistent with the terms of the Court's order, a website has been established, which provides Class members with access to key documents relevant to the Settlement, including the Notice, as well as answers to frequently asked questions and Spanish translations. Epiq is submitting an

---

[7]    *See* Settlement Agreement, ¶¶VI(1-6) .

[8]    *See* Settlement Agreement, ¶V(1) .

affidavit attesting to the notice program and compliance with the Court's order as it relates to the mailing of the Notice and Address Verification and the content of the website.

As the Declaration of Cameron Azari (Docket No. 118) attests, the Notice program comports with the requirements of due process and Fed. R. Civ. P. 23, as it provides the best notice practicable under the circumstances of this case through individual mailed notice to all Class members, who have been identified from Allstate's records. Specifically, postcard notice was mailed to all potential class members using addresses in Allstate's records, as updated by the Settlement Administrator. In addition, a long form Notice and other important documents and information were published on the Settlement website. *See, e.g., Carroll v. Stettler*, Civ. A. No. 10-2262, 2011 U.S. Dist. LEXIS 121185, at *11-*12 (E.D. Pa. Oct. 19, 2011).

## ARGUMENT

## I.      THE SETTLEMENT IS FAIR, REASONABLE, ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.      The Proposed Settlement Is Entitled To A Presumption Of Fairness

Federal courts repeatedly and consistently have recognized a universal and long-standing public policy favoring the settlement of civil actions. *See, e.g., Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("[c]ompromises of disputed claims are favored by the courts."). Settlements are particularly favored in complex class actions such as this one. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) (holding that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.");

*Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) (explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to 'an overriding public interest.'"). A proposed settlement of a class action should be approved in accordance with Rule 23(e) of the Federal Rules of Civil Procedure where it is "fair, reasonable and adequate." *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1990). District courts are afforded broad discretion when determining whether a proposed class action settlement is fair, reasonable and adequate. *See, e.g., Girsh v. Jepsen*, 521 F.2d 153, 156 (3d. Cir. 1975); *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978) (noting that trial courts have "wide discretion" when considering class action settlement approval.).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts consistently have held that the function of a judge reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving issues left unresolved by the settlement itself. *See, e.g., Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974), *cert. denied*, 419 U.S. 900 (1974). Thus, "the temptation to convert a settlement hearing into a full trial on the merits must be resisted." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1315 (3d Cir. 1993).

To this end, courts should "apply an initial presumption of fairness when reviewing a proposed settlement where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Warfarin Sodium*, 391 F.3d at

535. *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.18 (3d Cir. 2001); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003).

These elements are satisfied here:

- The Settlement was reached only after extensive, arm's-length negotiations, under the supervision and with the assistance of Judge Restrepo and a private mediator, during which the strengths and weaknesses of the parties' positions were thoroughly discussed, evaluated, and negotiated.
- Before agreeing to the Settlement, Plaintiffs' counsel completed extensive discovery and the parties briefed and argued competing summary judgment motions, which the Court resolved.
- Class Counsel has significant class action experience, and Allstate's counsel is equally experienced at complex litigation.
- Although the deadline for objections has not passed, to date only one objection has been received and that objection is only to the request for attorneys' fees and expenses.

Therefore, the Settlement is entitled to a presumption of fairness. *See Warfarin Sodium*, 391 F.3d at 535; *Linerboard*, 292 F. Supp. 2d at 640; *Lake v. First National Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994).

**B.      The Girsh Factors Strongly Support Approval**

The Third Circuit has "identified nine factors to be considered when determining whether a proposed class action settlement is fair, reasonable and adequate." *Warfarin Sodium*, 319 F.3d at 534. These factors, referred to as the *Girsh* factors, are:

> (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all attendant risks of litigation.

*Id.* at 534-35 (quoting *Girsh*, 521 F.2d at 156-57).

In this case, consideration of the Settlement in light of these factors demonstrates that the Settlement is fair, reasonable and adequate, and that final approval should be granted.

### 1. The Complexity, Expense, and Duration of the Litigation

The first *Girsh* factor to be considered is the amount of recovery obtained through the settlement compared to the complexity, expense and likely duration of the litigation. *See Girsh*, 521 F.2d at 157. "This factor captures 'the probable costs, in both time and money, of continued litigation.'" *Cendant*, 264 F.3d at 233 (quoting *General Motors*, 55 F.3d at 812). Here, this factor weighs heavily in favor of approval of the settlements.

The record in this case amply establishes the case's complexity. The parties argued extensively over the interpretation of the antitheft device discount provision of the MVFRL, as well as the applicability of the MVFRL's provision to standard equipment engine immobilizers. Discovery and summary judgment motions included issues relating to the function and availability of passive antitheft devices, as well as the availability and content of information sources identifying cars with passive antitheft devices. Allstate argued that it was complying with – and even exceeding – the requirements of Pennsylvania law and did not have the ability to apply an antitheft device discount without confirmation from an insured that a car had a passive antitheft device, for a variety of reasons. Allstate also submitted multiple expert reports contesting whether devices qualify for a passive antitheft device discount, contesting the timing of available information, and contesting Plaintiffs' statutory interpretation argument. The parties' competing summary judgment motions and Plaintiffs' motions in limine directed to Allstate's experts reflect the extensive record developed by both sides as they argued the issues in this case. While the Court entered summary judgment for Plaintiffs as to most of their individual cars, class certification remained pending at the time of the Settlement. Undoubtedly,

additional proceedings, including additional hotly contested motion practice and appellate practice, would have occurred to resolve Class members' claims, but for the Settlement.

The Settlement avoids the expenditure of substantial time and expense. *See, e.g.,* *Prudential*, 148 F.3d at 318 ("[W]e conclude the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court. The prospect of such a massive undertaking clearly counsels in favor of settlement."); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 297 (W.D. Pa. 1997) ("Given the complexity of this case, the large number of fact and expert witnesses and the voluminous documents relied on by both sides, the preparation for trial and the conduct of the trial itself would have been very time consuming and expensive."); *In re Lucent Technologies, Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 642-43 (D.N.J. 2004) (when a settlement "secures a substantial recovery without further litigation, delay, expense, or uncertainty, and this factor weighs in favor of the Settlement.").

Even though Plaintiffs prevailed on summary judgment as to the application of the antitheft device discount provision, the litigation could have continued for years. *See, e.g.,* *Warfarin Sodium*, 391 F.3d at 536 ("Moreover, it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[R]egardless [of] which party or parties prevail at trial, a direct appeal would be virtually certain to follow, resulting in further expense and protraction of the proceedings."). Allstate made clear its intention to contest the Court's summary judgment opinion and application of the MVFRL, including through an appeal to the Third Circuit.

On the other hand, the Settlement guarantees a cash benefit to the Class. The Settlement Allstate's agreement to continue for at least two years to apply an antitheft device discount

automatically based on whether its Home Office VIN Database indicates that a car has a passive disabling device. Class members already have been receiving the benefit of this procedure, which Allstate instituted after this litigation began and after the Court entered summary judgment for Plaintiffs.

The Settlement avoids years of delay and uncertainty. Apart from the normal litigation risks faced by plaintiffs in complex class actions such as this, Plaintiffs' claims are based on a part of the MVFRL that was interpreted for the first time in this case. While Plaintiffs are confident that the Class would prevail on any appeal of the Court's summary judgment motion, such an appeal on an issue of first impression would certainly delay the litigation and any appeal in any case has a level of risk to it.

Thus, the first *Girsh* factor strongly favors final approval of the settlements. *See, e.g., In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *22 (E.D. Pa. Jan. 4, 2001) ("Given the extremely large sums of money sought by Plaintiffs and the vigorous advocacy by the parties, any outcome, whether by summary judgment or trial, would be subject to lengthy post-trial motions and appeal. The risk of delay could have deleterious effects on any future recovery due to the time value of money.") (citation omitted); *Lazy Oil*, 95 F. Supp. 2d at 297 ("During the course of this litigation, Defendants have contested virtually every element of Plaintiffs' claims concerning both liability and damages. The Settlement provides benefits to the Class years earlier than would be possible if the case proceeded to trial and subsequent appeals. Thus, the Settlement not only avoids the substantial risks and uncertainties inherent in further litigation, it also obviates the need for expensive and protracted litigation.").

### 2.    Reaction of the Classes to the Settlements

The second *Girsh* factor to be considered in evaluating a proposed class action settlement

is the reaction of class members to the settlement.  This factor "attempts to gauge whether

members of the class support the settlement." *Prudential*, 148 F.3d at 318.  A lack of objections

by class members is highly significant.  *See Bell Atl.*, 2 F.3d at 1313-14; *In re Linerboard*

*Antitrust Litig.*, 296 F. Supp. 2d 568, 577-78 (E.D. Pa. 2003); *see also Stoetzner*, 897 F.2d at

118-19 (holding that 29 objections in a 281-member class "strongly favors settlement"); *In re*

*PNC Fin. Servs. Group, Inc.*, 440 F. Supp. 2d 421, 432 (W.D. Pa. 2006).

Although the deadline for Class members to object has not yet passed, to date, there has

been only one objection has been received.  The objection is not to the terms of the Settlement,

but rather to the amount of the fee request.[9]  Thus, the second *Girsh* factor strongly weighs in

favor of final approval.  If any additional objections are received, Plaintiffs will respond to them

before the scheduled final approval hearing.

### 3.    Stage of the Proceedings and Amount of Discovery Completed

The third *Girsh* factor to be considered is the stage of the proceedings and the amount of

discovery completed.  This factor "captures the degree of case development that class counsel

[had] accomplished prior to settlement.  Through this lens, courts can determine whether counsel

had an adequate appreciation of the merits of the case before negotiating." *General Motors*, 55

F.3d at 813.

As discussed above, and as explained in the accompanying Richards Declaration, before

reaching the Settlement, Plaintiffs' counsel completed extensive discovery in this and related

cases, thoroughly analyzed the evidence, worked with their expert, evaluated Allstate's expert

---

[9]      Class Counsel will address the objection in their memorandum of law in support of their
request for fees and expenses.

submissions, and briefed and argued summary judgment and class certification motions, as well as motions in limine. In short, at the time the Settlement was reached, Plaintiffs' counsel was in an excellent position to evaluate the claims in this case. *See, e.g.*, *Lucent*, 307 F. Supp. 2d at 644 (discovery, outside investigation, extensive motion practice and settlement negotiations shed light "on the strengths and weaknesses of the case, the risks of litigation, and the issues the Class would face at trial. The parties had more than a sufficient basis for assessing the strengths and weaknesses of the claims when they submitted the Settlement to the Court for approval. This factor thus weighs in favor of the Settlement."); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 538 (D.N.J. 1997) (acknowledging that, following discovery and other investigation the parties had "reached a stage in the proceedings where they adequately understood the merits of the putative class action and could fairly, safely, and appropriately decide to settle the action."). Accordingly, the stage of the proceedings factor favors approval of the Settlement.

### 4.    Risk of Establishing Liability

The fourth *Girsh* factor, the risks of establishing liability, "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *General Motors*, 55 F.3d at 814. "In examining this factor, the Court need not delve into the intricacies of the merits of each side's arguments, but rather may 'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.'" *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (quoting *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997)).

Class Counsel believes that the Class would have prevailed, including through any appeal by Allstate to the Third Circuit, but recognize that this case, like all complex litigation against large companies with experienced defense counsel, has inherent risks. Here, the MVFRL antitheft device provision has not been the subject of any previous court decisions. *See W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."); *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995); *see also Lazy Oil*, 95 F. Supp. 2d at 311 ("In light of the conflicting and ambiguous evidence, and the sharply differing opinions of the parties' experts, Plaintiffs' likelihood of prevailing at trial was far from assured.").

Moreover, in this case, Plaintiffs have argued that the evidence shows that Allstate obtains information from car manufacturers and ISO that shows whether a vehicle has a standard passive disabling device. Allstate vigorously disputed Plaintiffs on this issue, contending that the information it entered into its database did not allow it to determine whether a car qualified for a discount in Pennsylvania. Allstate also vigorously disputed Plaintiffs' assertion that standard insurance contract terms required it to use this information to apply an antitheft device discount.[10] While Plaintiffs prevailed before the Court on summary judgment as to their cars, absent the Settlement, Allstate would continue to contest these issues through an appeal. Nevertheless, as part of the Settlement, Allstate is using the data it contested to provide discounts automatically to Pennsylvania insureds.

---

[10] With respect to Defendant Encompass Indemnity Insurance Co., Allstate also argued that the Encompass insurance application asked whether a car has a passive antitheft device and that Encompass was entitled to rely on signed application answers.

### 5.    Risk of Establishing Damages

On the one hand, damages in this case are formulaic, based on a percentage of each Class member's comprehensive coverage premiums that Allstate did not discount.  On the other hand, Allstate would surely continue to contest each Class member's entitlement to damages.  Allstate, for instance, has argued that its database is insufficient to establish whether any Class member has a qualifying device.  While Plaintiffs' counsel believe the evidence contradicts Allstate, Allstate undoubtedly would continue to press this and similar positions in connection with proceedings to establish damages.

The Settlement eliminates any disputes over who qualifies for damages.  As part of the Settlement, Allstate has agreed to use its records to calculate distributions to class members without the need for Class members to submit any supporting documentation, providing class members with an immediate, quantifiable benefit.  *See, e.g.*, *Chambers*, 912 F. Supp. at 838 ("A very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes.")  Accordingly, the fifth *Girsh* factor weighs in favor of approval.

### 6.    Risk of Maintaining a Class Action Through Trial

In this case, at the time the Settlement was reached, the class certification motion had been fully briefed and was pending.  Moreover, even had a litigation class been certified, a district court "may decertify or modify a class at any time during the litigation if it proves to be unmanageable." *Prudential*, 148 F.3d at 321; *see also Perry*, 229 F.R.D. at 116 ("What the district court giveth, the district court may taketh away …").  Thus, with respect to the sixth *Girsh* factor, "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *Prudential*, 148 F.3d at 321; *see also Rent-Way*, 305 F. Supp. 2d at 506-07 ("[A]s in any class action, there remains

some risk of decertification in the event the Propose[d] Settlement is not approved. While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement.").

### 7.      Ability of Allstate to Withstand a Greater Judgment

The seventh *Girsh* factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *Cendant*, 264 F.3d at 240. Although Allstate's ability to pay a greater judgment is not in doubt, this factor deserves little weight, especially in light of the risks of continued litigation. *See Lazy Oil*, 95 F. Supp. 2d at 318 ("The Court presumes that Defendants have the financial resources to pay a larger judgment.) However, in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial, the Court accords this factor little weight in deciding whether to approve the proposed Settlement."); *Perry*, 229 F.R.D. at 116 ("Fleet could certainly withstand a much larger judgment as it has considerable assets. While that fact weighs against approving the settlement, this factor's importance is lessened by the obstacles the class would face in establishing liability and damages.").

### 8.      The Range of Reasonableness of the Settlement Light of the Best Possible Recovery

The eighth *Girsh* factor assesses the reasonableness of the settlement amount. As courts have explained, "[w]hile the court is obligated to ensure that the proposed settlement is in the best interest of the class members by reference to the best possible outcome, it must also recognize that settlement typically represents a compromise and not hold counsel to an impossible standard." *Aetna*, 2001 U.S. Dist. LEXIS 68 at *20-21; *see also General Motors*, 55 F.3d at 806 (noting that "after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."); *Lazy Oil*, 95 F. Supp. 2d at 338-39 (stating that a court

"should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and abandoning of highest hopes.'") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

The Settlement is well within the range of reasonableness. Under the terms of the Settlement, Distribution Class Members will receive their pro rata shares of a Net Settlement Fund that is $9 million (approximately 50 % of the aggregate discount amount), less any Court-approved attorney's fees, expenses, and incentive awards, and less up to a $500,000 credit to Allstate for paying all notice and administration costs. Distribution Class Members will receive up to 60% of their damages (reduced pro rata if the Net Settlement Fund is insufficient to make distributions of 60%). This alone represents a substantial percentage of potentially recoverable damages. On top of that, Allstate has agreed to significant structural relief. As a result of the Settlement, Allstate will continue for at least two years to automatically apply an antitheft device discount based on its Home Office VIN Database, a practice Allstate began after the Court entered summary judgment for Plaintiffs.

As a result, the Settlement provides substantial value to Class members in comparison to the potentially recoverable damages. Indeed, even if the Settlement were a much smaller amount, "courts have determined that a settlement can be approved even if benefits amount to a small percentage of the recovery sought. ... And, 'there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'" *Lazy Oil*, 95 F. Supp. 2d at 339 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974)).

### 9. Range of Reasonableness of the Settlement Fund in Light of All of the Attendant Risks of Litigation

The ninth *Girsh* factor is similar to the eighth – they "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Warfarin Sodium*, 391 F.3d at 538. Many of these risks are discussed above. In addition, "even assuming for the sake of argument that the Class could recover a larger judgment …, the additional delay that would inevitably follow with post-trial motions and appeals could effectively deny the Class any recovery for several more years. Thus, a future recovery, even one in excess of the proposed settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time." *Rent-Way*, 305 F. Supp. 2d at 501.

### C. The Additional *Prudential* Factors Confirm That the Settlement Should be Approved

In *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit identified additional factors that a district court can consider in determining whether a Settlement warrants final approval:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved- or likely to be achieved- for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether the fees are fair and reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* at 323.

Application of the factors relevant to this case confirms that the Settlement should be approved. The Settlement results in a fund that is a substantial percentage of potentially recoverable damages and, moreover, is consistent with the settlements against other insurers. Absent the Settlement, there would be no feasible means for Class members to obtain individual recoveries, as evidenced by the extensive record that was developed in this case to obtain the Settlement. Indeed, litigation against other defendants by other plaintiffs asserting similar claims continues. Class members have the ability to opt out of the Settlement. As set forth in the application of Class Counsel for an award of attorneys' fees, the fee request here is reasonable in comparison with the Settlement benefits. Finally, the claims processing procedure here is fair, as Allstate will use its records to automatically calculate amounts distributed to eligible Class members, who need not submit any additional documentation.[11]

**D.     The Experience of Class Counsel and Counsel for Settling Defendants Supports Final Approval of the Settlement**

While district courts have broad discretion in approving class action settlements, "significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class.'" *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) (citation omitted); *see also Spring Garden United Neighbors, Inc. v. City of Philadelphia*, Civ. A. No. 85-3209, 1986 U.S. Dist. LEXIS 29688 (E.D. Pa. Feb. 4, 1986) ("the professional judgment of counsel involved in the litigation is entitled to significant weight"); *In re American Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) ("In determining the fairness, adequacy, and reasonableness of a proposed settlement, significant weight should also be given 'to the belief of experienced counsel that settlement is in the best interest of the class,' so long as the Court is

---

[11]     Former policyholders of Allstate are required to submit an address verification to confirm that checks are being sent to the right people and may do so either on line or by mailing in a simple form. The Settlement provides considerable time for former policyholders to do this.

satisfied that the settlement is the product of 'good faith, arms-length negotiations.'"); *Austin*, 876 F. Supp. at 1457 ("courts have accorded significant weight to the view of experienced counsel who have engaged in arm's-length negotiations") (citation omitted); *In re Michael Milken and Assoc. Sec. Litig.*, 150 F.R.D. 57, 68 (S.D.N.Y. 1993) ("Experienced counsel's opinions are entitled to substantial weight by the Court in determining whether to approve [a] settlement.").

Here, Class Counsel and counsel for Allstate are experienced practitioners in complex litigation generally and class actions in particular. They engaged in arduous, arm's-length negotiations for more than a year with the assistance of Judge Restrepo and a private mediator in order to reach a well-considered Settlement. The negotiations involved numerous in-person and telephonic meetings involving Class Counsel, counsel for Allstate, and Judge Restrepo. In preparation for negotiations, Class Counsel undertook a diligent investigation of the legal and factual issues posed by this litigation. Thus, Class Counsel was well-informed as to the facts of the case and the strength of the claims asserted when the terms of the Settlement were negotiated.

## II.    PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE

The Court has broad discretion to approve a plan of distribution of settlement proceeds, as long as the distribution is fair and reasonable. *In re Cendant Corp., Litig.*, 264 F.3d 201, 253 (3d Cir. 2001); *see generally In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *In re Computron Software, Inc.*, 6 F.Supp.2d 313, 321 (D.N.J. 1998). "Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Meijer, Inc. v. 3M*, No. 04-5871, 2006 U.S. Dist. LEXIS 56744, at

*56 (E.D. Pa. Aug. 14, 2006) (citing *In re Aetna, Inc. Sec. Litig.*, No. MDL 1219, 2001 U.S. Dist. LEXIS 68, at *40 (E.D. Pa. Jan. 4, 2001)).

Here, the Net Settlement Fund (that is, the Settlement Fund after any Court awarded fees, expenses, and incentive award) will be allocated exactly according to Class members' type and extent of injuries. The Net Settlement Fund will be allocated pro rata so that each distribution to a Class member is based on the Class member's payment of comprehensive coverage premiums where Defendant's database shows the vehicle has a passive antitheft device, but Allstate did not apply at least a 10 percent antitheft discount. As such, the allocation among Class members is fair and reasonable.

## CONCLUSION

For the foregoing reasons, the Court should finally approve the Settlement.

Dated: August 14, 2014

Ira Neil Richards (PA ID No. 50879)
Arleigh P. Helfer, III (PA ID No. 84427)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 191003
(215-751-2503)

Joseph E. Mariotti
CAPUTO 7 MARIOTTI, P.C.
730 Main Street
Moosic, PA 18507
570-342-9999
570-457-1533

Of Counsel – Not Admitted in Pennsylvania:
John G. Jacobs
Bryan G. Kolton
JACOBS KOLTON, CHTD.
55 West Monroe Street, Suite 2970
Chicago, IL 60603
312-427-4000

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2014, I caused to be electronically filed the foregoing Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Settlement with the Clerk of the Court via CM/ECF.  Notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system.  Parties may access the filing through the Court's CM/ECF System.

_____
Ira Neil Richards

Dated: August 14, 2014