IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANN WARRICK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY | : | NO. 09-6077 |

\* \* \*

| | | |
|---|---|---|
| DEBORAH KOLESAR | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ENCOMPASS INDEMNITY COMPANY | : | NO. 09-5510 |

\* \* \*

| | | |
|---|---|---|
| NICOLE MECADON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INDEMNITY COMPANY | : | NO. 09-5511 |

\* \* \*

| | | |
|---|---|---|
| RONALD and KIM BUCARI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE PROPERTY AND | : | |
| CASUALTY INSURANCE COMPANY | : | NO. 09-5512 |

## FINDINGS OF FACT
## AND
## <u>CONCLUSIONS OF LAW</u>

**AND NOW**, this 1st day of October, 2014, upon consideration of the Plaintiffs'

Motion for Final Approval of the Settlement (Document No. 121 of Civ. A. No. 09-6077;

Document No. 129 of Civ. A. No. 09-5510; Document No. 128 of Civ. A. No. 09-5511; and

Document No. 127 of Civ. A. No. 09-5512) and after hearings on May 13, 2014 and

September 30, 2014, the Court makes the following findings of fact and conclusions of law:

## **FINDINGS OF FACT**

1. On May 14, 2014, the proposed settlement was preliminarily approved.

2. The Settlement Class as defined in the Order of May 14, 2014, includes all Allstate Insurance Company, Allstate Property and Casualty Company, Allstate Indemnity Company, Encompass Indemnity Co., Allstate Fire and Casualty Co., Encompass Insurance Company of America, Encompass Home & Auto Insurance Co., Deerbrook Insurance Co., and Northbrook Indemnity Co. (collectively, "Allstate") policyholders in Pennsylvania who, at any point from November 19, 2005 through December 31, 2013: (a) had a policy of automobile insurance that included comprehensive insurance coverage; (b) whose insured vehicle(s), according to Allstate's Home Office VIN System, had a passive antitheft device as manufacturer's standard equipment; and (c) did not receive at least a 10% discount on the comprehensive portion of the paid premium.

3. Excluded from the Settlement Class are the 126 individuals listed on the September 30, 2014 Opt-Out Report, attached as exhibit A to Document No. 127 of Civ. A. No. 09-6077.

4. Ann Warrick, Deborah Kolesar, Nicole Mecadon, and Ronald and Kim Bucari are the approved Class Representatives.

5. Ira Neil Richards, Kenneth I. Trujillo and Arleigh P. Helfer, III of Schnader Harrison Segal & Lewis LLP, and Joseph E. Mariotti of Caputo & Mariotti, P.C. have acted as Class Counsel.

6. Ira Neil Richards, Kenneth I. Trujillo and Arleigh P. Helfer, III have acted as Lead Counsel for the Settlement Class.

7. Notice of the proposed settlement was given to the vast majority of Class Members in compliance with the May 14, 2014 Order by Epiq Systems, which was appointed Settlement Administrator.[1] A small percentage of Class Members received notice of the proposed settlement 50 days after the date provided in paragraph 14 of the May 14, 2014 Order ("Supplemental Settlement Class Member List").

8. Notice of the September 30, 2014 hearing to determine: (a) whether this action satisfies the criteria for class certification set forth in Fed. R. Civ. P. 23(a) and (b); (b) whether the settlement of this action on the terms and conditions set forth in the Class Litigation Settlement Agreement (Document No. 110-1 in *Warrick v. Allstate Insurance Company*, Civ. A. No. 09-6077; Document No. 118-1 in Civ. A. No. 09-5510; Document No. 117-1 in Civ. A. No. 09-5511; and Document No. 116-1 in Civ. A. No. 09-5512) ("Settlement Agreement"), should be finally approved as fair, reasonable and adequate; (c) whether final approval should be granted; (d) the amount of attorneys' fees and expenses to be awarded to Class Counsel; and (e) whether a final order and judgment should be entered dismissing the claims of the Settlement Class with prejudice, was given to all Class Members.

9. There are over 389,000 Class Members.

10. Class Members were given the option of excluding themselves from the class by submitting a notice requesting exclusion to the Settlement Administrator no later than

---

[1] In June, 2014, Allstate gave Epiq a Settlement Class List containing the names and last-known addresses of approximately 450,000 potential Settlement Class Members. After refining the mailing list, on July 14, 2014, Epiq sent Class Notice to approximately 390,000 of those individuals. *See* Decl. of Julie Redell, ¶¶ 5-8 (Document No. 125 of Civ. A. No. 09-6077). In August, 2014, Allstate gave Epiq a Supplemental Settlement Class List containing the names and last-known addresses of an additional 3,600 potential Settlement Class Members. After refining this mailing list, Epiq sent Class Notice to approximately 3,500 of those individuals. Notice was undeliverable to 3,600 of the approximately 393,000 individuals who were mailed notice, resulting in approximately 389,000 who were successfully served with class notice. *See* Supp'l. Decl. of Kirsten Mason, ¶¶ 4-8 (Document No. 126 of Civ. A. No. 09-6077).

August 28, 2014; and September 29, 2014, for individuals on the Supplemental Settlement Class Member List.

11. One hundred twenty-six (126) individuals have timely and validly requested exclusion from the Settlement Class. *See* September 30, 2014 Opt-Out Report (Ex. A to Document No. 127 of Civ. A. No. 09-6077).

12. The deadline for serving written objections to the settlement and/or to the request by Class Counsel for an award of attorneys' fees and out-of-pocket expenses was September 5, 2014; and September 29, 2014, for individuals on the Supplemental Settlement Class Member List.

13. No Class Member has timely objected to the proposed settlement.

14. Only one Class Member has timely objected to the award of attorneys' fees and expenses.

15. Extensive investigation, drafting of pleadings, discovery, work with experts, litigation of motions for summary judgment filed by both parties that implicated contested issues of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), litigation of a motion for class certification and settlement negotiations have taken place at substantial expense to the parties.

16. If this settlement is not approved, there will be expensive and multiple future litigation.

17. On September 30, 2014, pursuant to Fed. R. Civ. P. 23(e), a final approval hearing was held.

18. The only persons attending the September 30, 2014 hearing were Class Counsel and the attorneys for the defendants.

## The Settlement

19. The settlement terms were reached after Class Counsel: (a) conducted a substantial investigation of the defendants' practices; (b) filed a complaint alleging that Allstate violated the MVFRL and breached the terms of its insurance contracts with Pennsylvania insureds by overcharging the plaintiff and other Pennsylvania insureds for automobile insurance; (c) engaged in extensive discovery; (d) litigated motions for summary judgment; (e) litigated a motion for class certification; and (f) engaged in extensive settlement negotiations. All of these actions resulted in an understanding of the strengths and weaknesses of the Class claims and the defendants' potential defenses, enabling counsel to make an informed decision that the proposed settlement is fair, adequate and reasonable, and in the best interests of the Settlement Class.

20. Settlement negotiations took place over several months in arms' length discussions.

21. The Settlement Agreement, which was entered into by the parties on April 25, 2014, was the product of careful and informed analysis by all parties, taking into consideration the respective strengths and weaknesses of the parties.

22. The parties have been and are represented by counsel experienced in class actions, complex commercial matters and consumer litigation in the federal courts.

23. The defendants have challenged the claims on legal grounds that raise a potential finding of no liability.

24. The parties genuinely believe there are inherent risks in proceeding to trial.

25. Settlement at this stage of the litigation will avoid delay in realizing a benefit for the affected Class Members, will avoid unnecessary litigation costs and will eliminate

uncertainty.

26. The absence of objections to the settlement itself, the single objection to the attorneys' fees, and the small number of persons opting out of the settlement demonstrate support for the approval of this settlement as fair and reasonable.

27. The settlement provides significant relief, which directly responds to the challenged conduct and provides relief to a large group of people with modest individual claims who could not practically seek redress on an individual basis.

28. The Settlement Agreement requires Allstate to create a $9,000,000 Settlement Fund. Any award for attorneys' fees and expenses, Class Representative Incentive Award, and payment of up to $500,000 in notice and administration costs, will be paid out of this Fund, creating a "Net Settlement Fund." Class Members entitled to a distribution ("Distribution Class Members") will receive a *pro rata* share of the Net Settlement Fund. All Current Policyholder Class Members automatically will receive a share of the Net Settlement Fund, while Former Policyholder Class Members will receive a share of the Net Settlement Fund if they return an "Address Verification Form" to the Settlement Administrator. *See* Settlement Agreement, ¶¶ I(x), V(1), VI(1)(a)-(c), VIII(1)-(2).

29. The Settlement Agreement also requires Allstate to pay the costs reasonably incurred in locating Class Members, providing notice to Class Members and administering and distributing Net Settlement Fund proceeds to eligible claimants. *See* Settlement Agreement, ¶ IX(2).

30. The Settlement Agreement also requires Allstate to provide prospective relief for two years to all vehicles that Allstate's Home Office VIN System shows is equipped with a passive antitheft device installed as part of the manufacturer's standard equipment. *See*

Settlement Agreement, ¶ V(3).

31. The Settlement Agreement does not grant preferential treatment to the Class Representatives or segments of the Class.

**Class Counsel's Request for Award of Attorneys' Fees
and Expenses and for Class Representative Incentive Awards**

32. Class Counsel undertook prosecution of this matter on a contingent basis and incurred expenses in its prosecution.

33. Class Counsel has applied for an attorneys' fees award in the amount of $3,000,000, which is 33% of the Settlement Fund, and for payment of out-of-pocket expenses in the amount of $115,160.48.

34. Class Counsel's intention to apply for an attorneys' fees and expenses award in the amounts set forth above was provided to all Class Members in the Notice of the proposed settlement.

35. There has been only one objection to the requested award of attorneys' fees and expenses filed.

36. The Class Representatives approve of Class Counsel's request for attorneys' fees and expenses.

37. The defendants do not oppose Class Counsel's request for attorneys' fees and expenses.

38. Extensive investigation, drafting of pleadings, discovery, litigation of motions for summary judgment, litigation of a motion for class certification and settlement negotiations have taken place at substantial expense to Class Counsel.

39. Using the lodestar method as a cross-check on the reasonableness of the

requested fees, Class Counsel's requested fee is below the lodestar.

40. The counsel fees requested are reasonable.

41. The out-of-pocket expenses incurred were reasonable and necessary.

42. Class Counsel has applied for a $5,000 incentive award to the Class Representatives in each case, for a total of $20,000.

43. Class Counsel's intention to apply for a class representative incentive award was provided to all Class Members in the notice of the proposed settlement.

44. There have been no objections to the requested incentive award.

45. The incentive award requested is reasonable.

## **CONCLUSIONS OF LAW**

### **Final Approval of the Settlement**

1. The settlement of a class action requires Court approval after notice to all members of the class. *See* Fed. R. Civ. P. 23(e).

2. The settlement comports with Rules 23(a) and 23(b)(3) in all respects.

3. The nine factors to be considered in assessing the fairness of a class action settlement are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 319-20 (3d Cir. 2011) (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009).

4. In light of these factors, the settlement is fair, reasonable and adequate.

**Approval of Class Counsel's Request for Award of Attorneys' Fees and Expenses**

5. An award for attorneys' fees and expenses in the settlement of a class action requires court approval after notice to all class members in a reasonable manner. *See* Fed. R. Civ. P. 23(h).

6. Notice of Class Counsel's intention to apply for an award of attorneys' fees and expenses has been provided to all persons in the class in a reasonable manner and satisfies the requirements of Federal Rule of Civil Procedure 23(h)(1).

7. Attorneys who create a settlement fund of benefits for class members by virtue of their efforts are entitled to be compensated for their services from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

8. In evaluating a counsel fee request, the following factors should be considered: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by Class Counsel; and (7) awards in similar cases. *See In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 194-95 (3d Cir. 2000)).

9. Of the two methods to analyze fee requests in class actions - the lodestar

method and the percentage of recovery method - the percentage of recovery method "is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 280 (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005)). The lodestar method can be used as a cross-check to verify that the fee award is not excessive. *See Sullivan*, 667 F.3d at 330 (citing *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006)).

10. Applying both the percentage of recovery and lodestar methods, and in consideration of the seven factors set forth in *Gunter*, Class Counsel's requests for an attorneys' fees award and out-of-pocket expenses award are fair and reasonable.

    /s/ Timothy J. Savage
    TIMOTHY J. SAVAGE, J.